**AEGIS LAW FIRM, PC**
SAMUEL A. WONG, State Bar No. 217104
KASHIF HAQUE, State Bar No. 218672
JESSICA L. CAMPBELL, State Bar No. 280626
FAWN F. BEKAM, State Bar No. 307312
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile:  (949) 379-6251
Email: fbekam@aegislawfirm.com

Attorneys for Plaintiff Patrick Joseph Neims,
individually and on behalf of all others similarly situated

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK JOSEPH NEIMS, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NEOVIA LOGISTICS DISTRIBUTION, LP; NEOVIA LOGISTICS SERVICES, LLC; and DOES 1 through 20, inclusive, <br><br> Defendants. | Case No. 5:23-cv-00716-PA (SHKx) <br><br> **SURREPLY TO MOTION TO COMPEL ARBITRATION** <br><br> Date:          July 24, 2023 <br> Time:         1:30 p.m. <br> Courtroom: 9A |

SURREPLY TO MOTION TO COMPEL ARBITRATION

1

**TABLE OF CONTENTS**

2   I.     INTRODUCTION ................................................................................ 4

3   II.    PLAINTIFF IS TRANSPORTATION WORKER EXEMPT

4          FROM THE FAA ............................................................................... 4

5          A.   Defendants' Arbitration Agreement is a Contract of

6               Employment ............................................................................ 4

7          B.   Plaintiff is a Transportation Worker Who Moved Goods in

8               the Stream of Interstate Commerce ..................................... 5

9   III.   THE ARBITRATION AGREEMENT IS NOT ENFORCEABLE

10         UNDER CALIFORNIA LAW ........................................................... 7

11         A.   The Class Action Waiver is Invalid Under *Gentry* .......... 7

12              1.   *Plaintiff's Potential Individual Recovery is Modest* ............... 7

13              2.   *Plaintiff's Declared that He Feared Potential*

14                   *Retaliation While Employed by Defendants* ........................ 9

15              3.   *Plaintiff Was Ill-Informed of His Rights* .............................. 11

16              4.   *There Are Real World Obstacles to the Vindication of*

17                   *Class Members' Rights* ........................................................ 12

18         B.   In the Absence of FAA Preemption, Labor Code § 229

19              Prohibits Arbitration of Claims Arising Under Labor Code

20              §§ 201, 202, 203, 226, and 266.7 ........................................ 12

21         C.   In the Absence of FAA Preemption, California Law

22              Prohibits Separating Plaintiff's PAGA Claim into Individual

23              and Non-Individual Components ........................................ 14

24  IV.    CONCLUSION ................................................................................ 14

25

26

27

28

SURREPLY TO MOTION TO COMPEL ARBITRATION

1

## **TABLE OF AUTHORITIES**

2

## **CASES**

3   *Abram v. C.R. England, Inc.*, 2020 WL 5077365 (C.D. Cal. Apr. 15,

4       2020) ............................................................................................................. 4

5   *Adolph v. Uber Technologies, Inc.*, 2023 WL 4553702 (2023) ............................ 13

6   *Arguelles-Romero v. Superior Court*, 184 Cal.App.4th 825 (2010) ........................ 7

7   *Arias v. Superior Court*, 46 Cal.4th 969 (2009) ..................................................... 7

8   *Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715 (2004) ..................................... 6, 7

9   *Borrero v. Travelers Indem. Co.*, 2010 WL 4054114 (E.D. Cal. Oct.

10      15, 2010) ................................................................................................... 9, 10

11  *Canava v. Rail Delivery Service, Inc.*, 2020 WL 2510648 (C.D. Cal.

12      2020) ......................................................................................................... 6, 9

13  *Fraga v. Premium Retail Servs.*, 61 F.4th 228 (1st Cir. 2023) ................................ 5

14  *Franco v. Athens Disposal Co., Inc.*, 171 Cal.App.4th 1277 (2009) ................... 8, 9

15  *Gabay v. Roadway Movers, Inc.* --- F.Supp.3d ----, 2023 WL 3144310

16      (S.D.N.Y. Apr. 28, 2023) appeal filed No. 23-757 (May 3, 2023) ...................... 4

17  *Garrido v. Air Liquide Industrial U.S. LP*, 241 Cal.App.4th 833 (2015) ........... 8, 11

18  *Gentry v. Superior Court*, 42 Cal.4th 443 (2008) ............................................. 9, 11

19  *Hoover v. American Income Life Ins. Co.*, 206 Cal.App.4th 1193

20      (2012) ........................................................................................................... 12

21  *Lane v. Francis Capital Mgmt. LLC*, 224 Cal.App.4th 676 (2014) ....................... 12

22  *Muller v. Roy Miller Freight Lines, LLC*, 34 Cal.App.5th 1056 (2019) ................. 12

23  *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal.App.5th 784 (2018) ........ 6, 7, 8, 10

24  *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93 (2022) ...................... 12

25  *New Prime, Inc. v. Oliveira*, 139 S.Ct. 532 (2019) ................................................ 3

26  *Southwest Airlines Co. v. Saxon*, 142 S.Ct. 1783 (2022) ....................................... 5

27  *Truly Nolen of America v. Superior Court*, 208 Cal.App.4th 487

28      (2012) ............................................................................................................. 9

SURREPLY TO MOTION TO COMPEL ARBITRATION

*Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906 (2022) .............................. 13

**<u>STATUTES</u>**

Labor Code § 96.8 ............................................................................................ 9

SURREPLY TO MOTION TO COMPEL ARBITRATION

## I.   INTRODUCTION

Defendants Neovia Logistics Distribution, LP and Neovia Logistics Services, LLC ("Defendants") cannot compel arbitration of this dispute under the FAA because Plaintiff Patrick Joseph Neims ("Plaintiff") is a transportation worker. Nevertheless, Defendants contend that Plaintiff's claims are arbitrable under California law despite their unlawful class action waiver and even though Plaintiff's claims seek to enforce the nonpayment of wages under Article 1 of the Labor Code. However, California law is clear that Defendants' Motion must be denied in its entirety.

## II.   PLAINTIFF IS TRANSPORTATION WORKER EXEMPT FROM THE FAA

### A. Defendants' Arbitration Agreement is a Contract of Employment

Defendants attempt to argue that their arbitration agreement is not a "contract of employment" because it is a standalone agreement not part of an employment contract. *See* Docket No. 29 ("Reply") at 2:16-3.:13. In *New Prime, Inc. v. Oliveira*, the Supreme Court recognized that "contracts of employment" not only include "***contracts that reflect an employer-employee relationship***," but also contracts for services of independent contractors. 139 S.Ct. 532, 539 (2019) (emphasis added). In other words, "contracts of employment" are not simply limited to employment contracts. *Id*.

Here, the arbitration agreement is a contract made between an employee and an employer (i.e., reflecting an employer-employee relationship) purporting to establish procedures for "all legal disputes and claims between them" including "all claims pertaining to Individual's employment or other relationship with the Company[.]" *See* Declaration of Arturo Ramirez in Support of Motion to Compel Arbitration, Dismiss Class and Representative Claims, and Stay Proceedings ("Ramirez Decl.") at ¶ 7, Exhibit 1. It was even presented to Plaintiff with his offer letter, which Defendants themselves concede "sets forth the general terms and

-4-

SURREPLY TO MOTION TO COMPEL ARBITRATION

conditions of the offer of employment." *Id*. at ¶ 5. The offer letter itself expressly states that, "***as a condition of your employment, you will be required to review and execute a Mutual Arbitration Agreement***." *Id*. at ¶ 7, Exhibit 1 (emphasis added). How could a contract which expressly made Plaintiff's employment consideration for its formation not constitute a contract of employment?

Contrary to Defendants' boilerplate assertion to the contrary, there are cases "holding that a standalone arbitration agreement is a 'contract of employment.'" *See* Docket No. 29 ("Reply") at 3:3-4. In fact, the argument Defendants advance here was rejected in *Abram v. C.R. England, Inc.*, where the plaintiff signed a standalone arbitration agreement that covered "a broad range of claims, including employment-related disputes." 2020 WL 5077365, at \*3 (C.D. Cal. Apr. 15, 2020). The court was "not persuaded that the Arbitration Agreement is not part of the Parties' comprehensive 'contract of employment.'" *Id*. The court also explained the ramifications of Defendants' argument: "An otherwise covered employer could circumvent section one by simply presenting employees with a contract outlining all terms and conditions of employment, followed by a separate arbitration agreement, even if that agreement compels arbitration of employment disputes. Congress could not have intended covered employers to avoid the exclusion so easily." *Id*. at \*4.  Relying on *Abram*, the court in *Gabay v. Roadway Movers, Inc.* reached the same conclusion. --- F.Supp.3d ----, 2023 WL 3144310, at \*6-7 (S.D.N.Y. Apr. 28, 2023) appeal filed No. 23-757 (May 3, 2023).

## B. Plaintiff is a Transportation Worker Who Moved Goods in the Stream of Interstate Commerce

In direct contravention of binding U.S. Supreme Court precedent, Defendants summarily state that Plaintiff cannot meet the transportation worker exception because he did not cross borders himself. Reply at 3:14-20. In *Southwest Airlines Co. v. Saxon*, the Supreme Court held that airline cargo loaders were engaged in interstate commerce "when they handle[d] goods traveling in interstate and foreign

-5-

1  commerce, either to load them for air travel or unload them when they arrive." 142

2  S.Ct. 1783, 1792 (2022). In doing so, the Court rejected the same argument

3  Defendants make here that the transportation worker exception only applies to

4  workers who physically cross state lines themselves. *Id*. at 1784.

5         Defendants do not dispute that Plaintiff "handle[d] goods traveling in

6  interstate and foreign commerce." *Id*. at 1789-90. Defendants readily admitted that

7  their "core services" are the transportation of goods in interstate commerce:

8  "Neovia is a third-party logistics company based out of Irvine, Texas. Neovia

9  operates more than 100 facilities in over 20 countries across six continents. The

10  core services Neovia provides are the distribution of service parts to dealers,

11  intermediaries and end-customers, delivery of individual manufacturing parts or

12  sub-assemblies direct to their manufacturing point of use, and the distribution of

13  finished goods." Martinez Decl. at ¶ 3. Even on reply, Defendant confirmed that

14  Plaintiff's entire job was "loading goods into shipping trucks and unloading goods

15  from shipping trucks within the Ontario warehouse." Docket No. 29-1,

16  Supplemental Declaration of Arturo Martinez ("Supp. Martinez Decl.") at ¶ 6.

17         If "airplane cargo loaders plainly perform 'activities within the flow of

18  interstate commerce' when they handle goods traveling in interstate and foreign

19  commerce," *Saxon*, 142 S.Ct. at 1792, then the same is true for Plaintiff, who loads

20  and unloads goods directly on and off delivery trucks headed out of the state or

21  country for a company whose sole purpose is the delivery and transportation of

22  goods through its more than 100 facilities in over 20 countries across six continents.

23  *See Fraga v. Premium Retail Servs.*, 61 F.4th 228, 235 (1st Cir. 2023) ("*Saxon*'s

24  repeated and emphasized command to focus on what the workers themselves

25  actually do strongly suggests that workers who do transportation work are

26  transportation workers.").

27  ///

28  ///

SURREPLY TO MOTION TO COMPEL ARBITRATION

## III. THE ARBITRATION AGREEMENT IS NOT ENFORCEABLE UNDER CALIFORNIA LAW

### A. The Class Action Waiver is Invalid Under *Gentry*

Plaintiff has provided sufficient evidence showing that the *Gentry* factors are met in this matter.

#### *1. Plaintiff's Potential Individual Recovery is Modest*

Plaintiff's potential individual recovery is $16,077.63. *See* Docket No. 28-1, Declaration of Patrick Joseph Neims ("Neims Decl.") at ¶ 7. This is a modest amount sufficient to meet the first *Gentry* factor. *See Canava v. Rail Delivery Service, Inc.*, 2020 WL 2510648, at *5 (C.D. Cal. 2020) (finding a potential recovery of $27,000 to be "modest" within the meaning of *Gentry*); *Bell v. Farmers Ins. Exch.*, 115 Cal.App.4th 715, 745 (2004) ("claims as large as $37,000" sufficiently modest to meet the first *Gentry* factor); *Muro v. Cornerstone Staffing Sols., Inc.*, 20 Cal.App.5th 784, 793 (2018) (first *Gentry* factor met where "maximum individual recovery would be less than $26,000.").

Defendants attempt to take issue with this estimate by arguing that it should include individual PAGA penalties, the value of injunctive relief, pre-judgment interest, and attorneys' fees. Reply at 6:18-23. Unsurprisingly, Defendants fail to cite any law or provide any evidence that the theoretical value of any of these items is appropriately included in considering the first *Gentry* factor. Nor would inclusion of attorneys' fees or injunctive relief make any sense, as those are not amounts that Plaintiff himself receives in recovery if he is successful on all his claims. In fact, Plaintiff's attorneys are ethically prohibited from sharing their fees with him. *See* California Rules of Professional Conduct, Rule 5.4(a) ("A lawyer or law firm shall not share legal fees directly or indirectly with a nonlawyer . . .").

Defendants also stack seven different types of PAGA penalties at $100 per pay period and ask the Court to attribute the entire amount to Plaintiff. As an initial matter, PAGA is not a class action claim. *Arias v. Superior Court*, 46 Cal.4th 969

-7-

1   (2009). Defendants' insistence on including it in the calculation of Plaintiff's

2   recovery under the *Gentry* factors is without legal support.

3         Further, Defendants' calculation of the PAGA penalties is incorrect. First,

4   Plaintiff's declaration avers that he could not have worked more than 45 pay

5   periods. Assuming $700 per pay period would amount to $31,500, not $45,000 as

6   Defendants contend. Second, Plaintiff cannot recover 100% of penalties under

7   PAGA. Reply at 7:5-8. Rather, "[o]f the civil penalties recovered, 75 percent goes

8   to the Labor and Workforce Development Agency, leaving the remaining 25

9   percent for the 'aggrieved employees.'" *Arias v. Superior Court*, 46 Cal.4th 969,

10   980-81 (2009). Even if the Court added 25% of the maximum amount of PAGA

11   penalties ($7,875.00) to Plaintiff's estimate of his potential individual recovery, it

12   would amount to $23,952.63, which is still a modest recovery. *See Bell*, 115

13   Cal.App.4th at 745. Even the addition of 10% of the total amount ($2,395.26) as

14   pre-judgment interest would not change the fact that Plaintiff's potential recovery is

15   modest under *Gentry*.

16         Defendants attempt to rely on *Arguelles-Romero v. Superior Court*, 184

17   Cal.App.4th 825, 844 (2010) for the proposition that $16,000 is not a modest

18   recovery.  But as the *Muro* court explained, *Arguelles-Romero* conflicts with the

19   much higher amounts discussed in *Bell*, 115 Cal.App.4th at 715, n. 5. *Muro*, 20

20   Cal.App.4th at 793. "More important, the cited comment by the *Arguelles-Romero*

21   court was part of its discussion of whether the class waiver provision was invalid as

22   unconscionable under *Discover Bank v. Superior Court* (2005) 36 Cal.4th 148, 30

23   Cal.Rptr.3d 76, 113 P.3d 1100, and *not* whether, under *Gentry*, 'a class arbitration

24   (or action) is a significantly more effective practical means of vindicating

25   unwaivable statutory rights, which is a discretionary determination subject to abuse

26   of discretion review.'" *Id.*

27        Here, Plaintiff has submitted evidence and cited to case law demonstrating

28   that the potential recovery here is "modest" within the meaning of *Gentry*, and

SURREPLY TO MOTION TO COMPEL ARBITRATION

1   Defendants have failed to provide evidence or case law disputing that. Even

2   Defendants' own valuation of the maximum amount in controversy for this class

3   action shows that the potential individual recovery is modest. Specifically, in its

4   Notice of Removal, Defendants estimated that the maximum amount in controversy

5   for Plaintiffs' claims was $9,034,975.20. *See* Docket No. 1 at ¶ 37. With at least

6   1,878 employees in the putative class, *see id.* at ¶ 17, the potential individual

7   recovery for each class member on average is just $4,810.96. Therefore, the first

8   *Gentry* factor weighs against enforcing the class action waiver.

9          ***2. Plaintiff's Declared that He Feared Potential Retaliation While***

10              ***Employed by Defendants***

11         Plaintiff submitted a declaration stating that he feared retaliation. *See* Neims

12  Decl. at ¶ 5. Courts have found similar declarations sufficient to meet the second

13  prong of the *Gentry* test. *See Muro*, 20 Cal.App.5th at 794 (second factor was

14  satisfied where "Muro's expression of his own concerns about retaliation provided

15  a sufficient basis for the court, as the finder of fact, to draw the reasonable inference

16  that other similar situated drivers shared those same concerns."); *Garrido v. Air*

17  *Liquide Industrial U.S. LP*, 241 Cal.App.4th 833, 846 (2015) (second factor was

18  satisfied where "Garrido stated that, had he known his statutory rights were being

19  violated during his employment at Air Liquide, he would not have been willing to

20  bring a lawsuit because of fear of retaliation by Air Liquide."); *Franco v. Athens*

21  *Disposal Co., Inc.*, 171 Cal.App.4th 1277, 1296 (2009) (second factor was satisfied

22  where plaintiff declared he felt he would be fired if he complained).

23         Defendants argue that Plaintiff's declaration is insufficient because he was a

24  former employee when he signed it. Reply at 7:14-22. As the court in *Canava*

25  explained in rejecting the same argument, "that fact only underscores Plaintiff's

26  assertion that the fear of retribution forced him to wait until he was no longer

27  employed to bring a lawsuit. The former employees' 'expression of [their] own

28  concerns about retaliation provide[s] a sufficient basis . . . to draw the reasonable

-9-

SURREPLY TO MOTION TO COMPEL ARBITRATION

1  inference that other similarly situated [current] drivers shared those same

2  concerns.'" *Canava*, 2020 WL 2510648 at *5 (citations omitted); *see also Franco*,

3  171 Cal.App.4th at 1296 ("Of course, Franco is no longer working at Athens. But

4  that simply strengthens his status as the representative in a *class* action or *class*

5  arbitration because it is reasonably presumed potential class members *still*

6  *employed* by [the] employer might be unwilling to sue individually or join a suit for

7  fear of retaliation at their jobs.") (internal quotations omitted).

8      Defendants also argue their company policies prove that retaliation is an

9  impossibility. Reply at 7:23-8:8. However, it is not simply the potential for

10 retaliation that courts must consider, but *the fear* of potential retaliation. *Gentry v.*

11 *Superior Court*, 42 Cal.4th 443, 460-61 (2008). In *Gentry*, the defendant argued

12 that there was no potential for retaliation because Labor Code § 96.8 made it

13 unlawful. *Id*. at 461. The court rejected this argument, stating that "retaliation

14 would cause immediate disruption of the employee's life and economic injury, . . .

15 and the outcome of the complaint process is uncertain." *Id*. Therefore, "the

16 existence of an antiretaliation statute and an administrative complaint process [does

17 not] undermine[] Gentry's point that fear of retaliation will often deter employees

18 from individually suing their employers." *Id*.

19     Defendants' reliance on *Truly Nolen of America v. Superior Court*, 208

20 Cal.App.4th 487 (2012) does nothing to bolster their argument. Unlike here, the

21 court found that there was no evidence supporting the *Gentry* factors because the

22 plaintiffs in that case "acknowledged they were *aware* of their rights under wage

23 and hour laws, and expressly notified their manager that their rights were being

24 violated, but Truly Nolen refused to remedy the situation or remind the employees

25 that they had signed an arbitration agreement." *Id*. at 510.

26     Defendants' reliance on *Borrero v. Travelers Indem. Co.*, 2010 WL 4054114

27 (E.D. Cal. Oct. 15, 2010) is similarly unavailing. There, the only evidence before

28 the court was that "plaintiff's employment context may have been inherently

-10-

SURREPLY TO MOTION TO COMPEL ARBITRATION

1  discouraging with respect to employees' making overtime claims, [Citiation],

2  plaintiff does not contest defendant's assertion that she has not been discouraged

3  from filing other claims." *Id*. at *2. Unlike Plaintiff here, the plaintiff in *Borrero*

4  simply stated that she was discouraged from claiming overtime, not that she feared

5  retaliation if she complained of alleged Labor Code violations.

6      Nothing in *Gentry* or any other case requires Plaintiff to show he or any other

7  class member was *actually* retaliated against to meet the second factor.

8                    *3.  Plaintiff Was Ill-Informed of His Rights*

9      Plaintiff declared that he did not understand all of his rights under California

10  law when he was employed by Defendants. *See* Neims Decl. at ¶ 5. This is

11  sufficient to meet the third *Gentry* factor. *See Muro*, 20 Cal.App.5th at 794-95

12  (third factor satisfied by employee's declaration that employee did not know what

13  employee's rights were and that employer made no effort to inform employee of

14  these rights; it is reasonably inferred from this that potential class members also

15  may not have been informed of their rights). It logically flows from Plaintiff's

16  statement that Defendants made no effort to inform him of his rights during his

17  employment, otherwise he would not be able to declare that he did not understand

18  all of his rights during his employment.

19      Defendants argue that they informed class members on their wage and hour

20  rights, relying on excerpts of their handbook. *See* Reply at 8:11-25. But their

21  handbook does nothing to inform employees of their rights under their Labor Code.

22  *See* Supp. Martinez Decl. at ¶ 3, Exhibit 2. The handbook does not reference the

23  Labor Code once. *See id*. In fact, its policies frequently state, "unless otherwise

24  provided by state or local law" with no discussion of what state or local law

25  provides. *See id*. If anything, Defendants' handbook just informs class members of

26  what Defendants' policies are, not what protections the law provides.

27      Defendants' reliance on verbal communications about class members' rights

28  to meal and rest periods under Defendants' policies and posters similarly does

SURREPLY TO MOTION TO COMPEL ARBITRATION

nothing to challenge Plaintiff's testimony. The only wage and hour posters Defendants are required to post are: (1) a poster setting forth California's minimum wage rate; (2) the applicable Industrial Welfare Commission Wage Order; and (3) a payday notice. Even if a class member combed through these posters with a magnifying glass, they do not contain information about class members rights to, for example, reimbursement for business expenses. And as the court in *Canava* recognized, "California employment law is complex, and many well-educated, English-speaking individuals do not fully understand their rights.").

### *4. There Are Real World Obstacles to the Vindication of Class Members' Rights*

Defendants' only argument against the fourth *Gentry* factor is that Plaintiff failed to show their arbitration agreement is procedurally unconscionable. *See* Reply at 9:19-10:11. But "other real world obstacles to the vindication of class members' right to overtime pay through individual arbitration" is not so limited. *Gentry*, 42 Cal.4th at 463. In fact, in *Garrido*, the appellate court upheld the trial court's finding that the fourth factor was satisfied based on *Gentry's* reasoning: "the trial court relied on *Gentry's* reasoning that a 'requirement that numerous employees suffering from the same illegal practice each separately prove the employer's wrongdoing is an inefficiency that may substantially drive up the costs of arbitration and diminish the prospect that the overtime laws will be enforced." *Garrido*, 241 Cal.App.4th at 846-47.

There is sufficient evidence that a class proceeding here would be a significantly more effective way of allowing employees to vindicate their statutory rights.

### B. In the Absence of FAA Preemption, Labor Code § 229 Prohibits Arbitration of Claims Arising Under Labor Code §§ 201, 202, 203, 226, and 266.7

Plaintiff has asserted claims for violations of Labor Code §§ 201, 202, 203,

-12-

1   226, and 226.7 in the operative complaint. *See* Docket No. 1-2 (First Amended

2   Complaint). All of these code sections are contained in Article 1 of the Labor Code

3   and are actions to enforce the nonpayment of wages, as each is triggered by the

4   nonpayment of wages, and therefore cannot be compelled to arbitration.

5           Defendant argues that the scope of Labor Code § 229 is limited to claims

6   brought on an individual basis, not claims brought on a class action basis. *See*

7   Reply at 10:14-20. It fails to cite any authority for this proposition, likely because

8   there are numerous cases applying Labor Code § 229 to claims brought on a class-

9   wide basis when not preempted by the FAA. *See Hoover v. American Income Life*

10  *Ins. Co.*, 206 Cal.App.4th 1193 (2012); *Muller v. Roy Miller Freight Lines, LLC*, 34

11  Cal.App.5th 1056 (2019).

12          Defendants also argue that Plaintiff's claims for unpaid wages do not fall

13  within Section 229's exemption, citing *Lane v. Francis Capital Mgmt. LLC*, 224

14  Cal.App.4th 676 (2014). *See* Reply at 10:21-11:2. But in *Lane*, the plaintiff's third

15  cause of action was for "unpaid wages." *Lane*, 224 Cal.App.4th at 680. The court

16  held that that cause of action was within the scope of Section 229's exemption.

17          Defendants also fail to recognize binding law from the California Supreme

18  Court in arguing that Plaintiff's claims for meal and rest periods are not wages. *See*

19  Reply at 11:3-10. In fact, the California Supreme Court recently confirmed that the

20  premium pay for violating the Labor Code's meal and rest provisions constitutes

21  "wages." *Naranjo v. Spectrum Security Services, Inc.*, 13 Cal.5th 93 (2022).

22  *Naranjo* was decided *after* the authorities Defendants rely on, and is dispositive on

23  this issue. Therefore, Plaintiff's Labor Code § 226.7 claim is an action to enforce

24  the provisions of Article 1 of the Labor Code for the collection of due and unpaid

25  wages.

26  ///

27  ///

28  ///

-13-

SURREPLY TO MOTION TO COMPEL ARBITRATION

**C. In the Absence of FAA Preemption, California Law Prohibits Separating Plaintiff's PAGA Claim into Individual and Non-Individual Components**

Defendants failed to address Plaintiff arguments regarding the validity of their representative waiver. *See generally*, Reply. Because the FAA does not apply to this dispute, California law applies and Plaintiff's PAGA action "cannot be divided into individual and non-individual claims." *Viking River Cruises, Inc. v. Moriana*, 142 S.Ct. 1906, 1922-1925 (2022). Even if such splitting was appropriate here, the California Supreme Court has held that a plaintiff does not lose standing to pursue his non-individual representative PAGA claims when his individual claims are compelled to arbitration. *Adolph v. Uber Technologies, Inc.*, 2023 WL 4553702 (2023).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' Motion in its entirety.

Dated:  July 27, 2023                    **AEGIS LAW FIRM, PC**


                                                     By: /s/ Fawn F. Bekam
                                                         Fawn F. Bekam
                                                         Attorneys for Plaintiff Patrick Joseph
                                                         Neims

SURREPLY TO MOTION TO COMPEL ARBITRATION